IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TAMMY MICHELLE RANDALL, | : | |
| Plaintiff, | : | Case No. 2:17-cv-785 |
| v. | : | JUDGE ALGENON L. MARBLEY |
| COMMISSIONER OF SOCIAL SECURITY, | : | Magistrate Judge Jolson |
| Defendant. | : | |

**OPINION & ORDER**

This matter comes before the Court for consideration of Plaintiff Tammy Michelle Randall's Objection to the Magistrate Judge's Report and Recommendation (ECF No. 10). The Magistrate Judge recommended that this Court overrule Ms. Randall's Statement of Specific Errors, (ECF No. 7), and affirm the Commissioner of Social Security's decision. Upon independent review by this Court, and for the reasons set forth below, Ms. Randall's Objection is hereby **OVERRULED**. The Court **ACCEPTS** and **AFFIRMS** the Magistrate Judge's Report and Recommendation.

**I. BACKGROUND**

Ms. Randall applied for Title XVI Supplemental Security Disability Benefits on January 31, 2014 and applied for Title II Social Security Benefits on May 6, 2014. (ECF No. 6 at PageID 51). She asserted that she has been disabled since October 30, 2013 due to hearing loss, hypertension, degenerative disc disease, lumbar spine impairment, cervical spine impairment, and severe back pain. (*Id.* at PageID 260-63). After initial administrative denials of Ms. Randall's applications, an Administrative Law Judge ("ALJ") held a hearing on February 27, 2017 at Ms. Randall's request. (*Id.* at PageID 51). On May 8, 2017, the ALJ issued a decision

finding that Ms. Ross was not disabled within the meaning of the Social Security Act. (*Id.* at PageID 48-67).

In her opinion denying benefits, the ALJ conducted the required five-step sequential analysis for disability benefits claims. *See* 20 C.F.R. § 416.920(a)(4).[1] At step one, the ALJ determined that Ms. Randall has not engaged in substantially gainful activity since August 2013, before her alleged onset date. (ECF No. 6 at PageID 53).

At step two, the ALJ found that Ms. Randall had the following severe impairments: degenerative disc disease, unspecified arthropathies (hallux valgus deformity, osteoporosis), bipolar disorder, and anxiety. (*Id.*). The ALJ found that Ms. Randall's substance use disorder and alcohol abuse disorder did not constitute severe impairments. (*Id.* at PageID 54). Also, the

---

[1] The five sequential steps are as follows:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . .

20 C.F.R. § 416.920(a)(4).

ALJ found no medically determinable evidence sufficient to substantiate impairments from irritable bowel syndrome, carpal tunnel, or migraines. (*Id.*).

At step three, the ALJ further found that Ms. Randall's impairments, whether taken alone or in combination, did not meet or medically equal one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at PageID 55-57).

At step four, the ALJ found that Ms. Randall has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a), except she was limited to: (1) lift and/or carry ten pounds occasionally and less than ten pounds frequently; (2) sit for six hours in an eight-hour workday and stand and/or walk two hours in an eight-hour workday; (3) push and/or pull as much as she can lift and/or carry; (4) climb ramps and stairs occasionally and never climb ladder, ropes, or scaffolds; (5) have occasional exposure to vibration; (6) need to change positions a maximum frequency of every thirty minutes; (7) understand, remember, and carryout simple routine and repetitive tasks; (8) use judgment limited to simple work-related decisions; (9) tolerate few changes in a routine work setting defined as performing the same duties at the same duty station or location from day to day; and (10) occasional and superficial contact with supervisors, co-workers and the public. (*Id.* at PageID 57). The ALJ determined that the RFC indicated Ms. Randall was unable to perform any past relevant work. (*Id.* at PageID 65).

At step five, the ALJ found that Ms. Randall can perform jobs that exist in significant numbers in the national economy. (*Id.* at PageID 65-67). Thus, the ALJ concluded that Ms. Randall was not disabled. (*Id.* at PageID 67).

The Appeals Council denied Ms. Randall's request for review of the ALJ's determination on July 5, 2017, rendering the ALJ's benefits-denial decision the Commissioner's final agency

action. Ms. Randall then filed suit in federal court, alleging in her Statement of Errors that the ALJ failed to weigh medical opinion evidence properly when determining the RFC and failed to evaluate Ms. Randall's testimony properly. (ECF No. 7). Ms. Randall also argues that the ALJ relied on a flawed hypothetical question to the vocational expert ("VE") at Ms. Randall's hearing. (*Id.*). On April 10, 2018, the Magistrate Judge recommended that this Court overrule Ms. Randall's Statement of Errors and affirm the Commissioner's denial of benefits. (ECF No. 10). Ms. Randall timely objected, and the Commissioner filed a response to the objection. (ECF Nos. 11, 12).

## II. STANDARD OF REVIEW

Upon objection to a magistrate judge's report and recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b). This de novo review, in turn, requires the Court to "determine whether the record as a whole contains substantial evidence to support the ALJ's decision" and to "determine whether the ALJ applied the correct legal criteria." *Inman v. Astrue*, 920 F. Supp. 2d 861, 863 (S.D. Ohio 2013). Substantial evidence means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quotation omitted). Substantial evidence is "more than a mere scintilla, but only so much as would be required to prevent judgment as a matter of law against the Commissioner if this case were being tried to a jury." *Inman*, 920 F. Supp. 2d at 863 (citing *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988)); *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (substantial evidence is "more than a scintilla of evidence but less than a preponderance") (quotations omitted). If "substantial evidence supports the ALJ's decision, this Court defers to

that finding even if there is substantial evidence in the record that would have supported the opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quotation omitted).

## III. ANALYSIS

### A. The ALJ Properly Evaluated the Medical Opinion Evidence

Ms. Randall objects to the Magistrate Judge's recommendation regarding the weight that the ALJ attributed to the medical opinions of Dr. Pritchett, Dr. Mathur, and the state agency medical consultants. This Court finds that the record contains substantial evidence to support the ALJ's allocation of weight to each of these opinions.

When not giving controlling weight to a treating source's medical opinion, the ALJ must consider the following five factors in determining the appropriate weight to attribute to each medical opinion: (1) examining relationship – whether the source has examined the claimant personally; (2) treatment relationship – whether the source's opinion results from a long-term, ongoing treatment relationship with the claimant; (3) supportability – whether relevant evidence such as medical signs and laboratory findings support the opinion; (4) consistency – whether the opinion is consistent with the record as a whole; (5) specialization – whether the source's specialty, if any, is pertinent to the relevant medical issues. 20 C.F.R. § 404.1527(c).

Ms. Randall argues that the ALJ failed to consider the record as a whole before discounting the opinion of her treating physician, Dr. Pritchett. This Court disagrees. The ALJ properly afforded little weight to Dr. Pritchett's medical opinion. An ALJ need not "give controlling weight to a treating source's opinion [if]… inconsistent with the other substantial evidence in the case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x. 377, 384 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2)) (internal quotation marks omitted). As the Magistrate Judge correctly pointed out, the ALJ must provide good reasons for assigning less

than controlling weight to a treating physician's opinion. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010); 20 C.F.R. § 416.927(c)(2). Good reasons include, *inter alia*, "a treating physician's opinion that contradicts other medical evidence in the record[]… [or] that contradicts other opinions of the same treating physician already in the record." *Henderson v. Astrue*, No. 10-CV-238-JMH, 2011 WL 3608164, at *3 (E.D. Ky. Aug. 16, 2011).

Here, the ALJ provided sufficient reasons for rejecting Dr. Pritchett's opinion. The ALJ explained that Dr. Pritchett's opinion was inconsistent with his own treatment notes and other objective medical evidence. (ECF No. 6 at Page ID 63). For example, Dr. Pritchett's treatment notes consistently show that Ms. Randall had full range of motion in her upper and lower extremities and normal muscle strength and tone. (*Id.* at PageID 575-76, 608-09, 611-12, 614-15, 617-18, 924, 962-63, 966-67). Additionally, a wrist x-ray showed no abnormalities, (*Id.* at PageID 919), and Ms. Randall received a perfect score on a grip-strength test. (*Id.* at PageID 534). This evidence contradicts the "significant" limitation in movement and reach that Dr. Pritchett later identified in his disability impairment opinion. (*Id.* at PageID 959). The ALJ noted that Dr. Pritchett's opinion was also inconsistent with Ms. Randall's daily activities and other physicians' assessment of her neurological condition. (*Id.* at PageID 63). For the foregoing reasons, the record contained substantial evidence that justified the ALJ's decision to assign little weight to Dr. Pritchett's opinion.

Ms. Randall also contends that the ALJ should have assigned greater weight to the medical opinion of Dr. Mathur because his opinion is specific enough to indicate that Ms. Randall could not sit, stand, or walk for long periods of time and because his opinion is consistent with Dr. Pritchett's treatment notes. (ECF No. 11 at 3). However, Ms. Randall ignores the inconsistencies between Dr. Mathur's and Dr. Pritchett's medical findings. For

example, Dr. Mathur indicated that Ms. Randall could lift or carry 20-30 pounds, (ECF No. 6 at PageID 533), but Dr. Pritchett stated that she could lift or carry only 5-10 pounds. (*Id.* at PageID 958). Though Dr. Mathur's opinion does not clearly contradict Dr. Pritchett's notes in all areas, the ALJ found that other evidence contradicts the medical claims on which Dr. Pritchett and Dr. Mathur agreed. For example, the ALJ determined that Ms. Randall's daily activities, such as shopping at the grocery store, using public transportation, walking to her friend's house for coffee, and bathing her four-year old grandson, precluded a finding that Ms. Randall's abilities to sit, stand, or walk were as severely limited as Dr. Pritchett found. (*Id.* at PageID 62-63). Regardless, Dr. Mathur's notes are less than clear as to how severe he believed Ms. Randall's limitations to be. He provided no concrete estimate of how long she could sit, stand, walk, or carry objects. (*Id.* at PageID 534-35). His somewhat cursory findings regarding these limitations came after only one visit with Ms. Randall. (*Id.* at PageID 62). Because Dr. Mathur's opinion was the unduly vague product of a limited treatment relationship, it was appropriate for the ALJ to discount it. *See Coldiron v. Comm'r Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010) (finding that ALJ properly discounted a portion of a medical opinion for vagueness because the doctor failed to include a time restriction on the claimant's ability to sit); 20 C.F.R. § 404.1527(c)(2). For these reasons, substantial evidence supports the ALJ's decision to give little weight to Dr. Mathur's opinion.

Finally, Ms. Randall disputes the ALJ's decision to assign greater weight to the medical opinions of the state agency consultants than it assigned to Dr. Mathur. (ECF No. 11 at 3). The ALJ assigned partial weight to the opinions of the state agency consultants. These consultants had specialized program knowledge, but they examined Ms. Randall before the emergence of additional medical evidence. (ECF No. 6 at PageID 62). The subsequent evidence suggested

that the limitations to her functional capacity became more severe after the state agency assessment. (*Id.*). Precedent supports the ALJ's allocation of partial weight under these circumstances. *See, e.g.*, *Hoskins v. Comm'r Soc. Sec.*, 106 F. App'x. 412, 415 (6th Cir. 2004) (upholding ALJ decision to grant partial weight to state agency consultants' medical opinions where the consultants had expert program knowledge but examined the claimant before he developed additional functional limitations).

For these reasons, Ms. Randall's objection to the ALJ's evaluation of the relevant medical opinions is overruled. The Court **ADOPTS** the Magistrate Judge's Report and Recommendation on this point and affirms the Commissioner's finding.

### B. The ALJ Did Not Err by Partially Discounting Ms. Randall's Testimony

The ALJ found that Ms. Randall's testimony was partially inconsistent with the overall record. (ECF No. 6 at PageID 64). The Magistrate Judge agreed. (ECF No. 10 at 17-20). Ms. Randall objects, arguing that the ALJ relied on inadequate reasoning and authority in deciding that Ms. Randall's testimony lacked consistency with the overall record. (ECF No. 11 at 4-6). This objection is without merit.

In evaluating subjective complaints of disabling pain, the Court must determine if there is objective evidence of the underlying condition and then examine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). "[C]redibility determinations with respect to subjective complaints of pain rest with the ALJ." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quotations omitted). The ALJ can discount credibility when there are contradictions among the

medical reports, claimant's testimony, and other evidence. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

The ALJ provided the following reasons for discounting portions of Ms. Randall's testimony: (1) Ms. Randall's description of her symptoms was inconsistent with objective medical findings; (2) the level of treatment and care was inconsistent with the severity of her alleged symptoms; (3) digital imaging and physical examinations did not corroborate Ms. Randall's subjective complaints; and (4) Ms. Randall's daily activities were inconsistent with the intensity and limiting effects of her alleged symptoms. (ECF No. 6 at PageID 64).

Ms. Randall argues that the ALJ ignored "extensive objective and clinical evidence of disability" and instead relied on her own lay interpretation of medical records in finding inconsistencies with Ms. Randall's testimony. (ECF No. 11 at 4). This argument is not well-taken because substantial evidence contradicts Ms. Randall's subjective assessment of her condition. *See Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."). As the ALJ noted, Dr. Pritchett's treatment notes indicated normal range of motion and strength throughout the treatment period, ranging from April 2014 to February 2017. (ECF No. 6 at PageID 575-76, 608-09, 611-12, 614-15, 617-18, 924, 962-63, 966-67). MRI imaging of Ms. Randall's spine indicated mild findings as well. (*Id.* at PageID 529). The ALJ was justified in finding that Ms. Randall's subjective testimony was inconsistent with these objective medical findings, digital imaging results, and physical examinations.

Contrary to Ms. Randall's assertions, the ALJ properly considered how Ms. Randall's medication had improved her condition. (ECF No. 6 at PageID 64). The ALJ may rely, in part, on improved symptoms when determining the credibility of a claimant's testimony. *See, e.g.*,

*Dempley v. Astrue*, No. CIV.A.309CV651, 2010 WL 1979404, at *3 (W.D. Ky. May 14, 2010). Here, Ms. Randall indicated that Bengay reduced her neck pain and that she had been "doing very well" since she began to take Seroquel. (ECF No. 6 at PageID 58-59). She also stated that she regretted not seeking treatment sooner because her medications had been effective. (*Id.* at PageID 953).

The ALJ did not err by considering the nonaggressive nature of Ms. Randall's medical treatment. It is permissible for an ALJ to discount a claimant's subjective testimony on the disabling effects of her pain when doctors have proceeded conservatively in addressing the alleged pain. *See, e.g.*, *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 638 (6th Cir. 2016). Here, Ms. Randall admitted that she received conservative treatment, and she did not receive any emergency medical intervention. (ECF No. 6 at PageID 64). Ms. Randall's acknowledgement of her improved symptoms indicates that the level of treatment she received, though conservative, was noticeably effective. (*Id.* at 58-59, 953).

Finally, Ms. Randall misses the mark when she contends that "the ALJ erred by discounting [Ms. Randall's] statements because [she] engages in some activities of daily living." (ECF No. 11 at 5). The ALJ did not merely discount Ms. Randall's testimony because she engages in common activities of daily life; the ALJ discounted her testimony because Ms. Randall's specific daily activities contradict the alleged intensity and limiting effects of her symptoms. Therefore, the ALJ committed no error. *See Williams v. Comm'r of Soc. Sec.*, No. 08-13472, 2009 WL 2595692, at *7 (E.D. Mich. Aug. 20, 2009) (upholding ALJ's decision to discount claimant's testimony because "her admitted functioning level contrasts sharply with her allegations of disability"). Ms. Randall states that she can only sit for two to four minutes consecutively, (ECF No. 6 at PageID 93), but she elsewhere admits that she regularly sits with

her grandson to watch cartoons, (*Id.* at PageID 96). Ms. Randall also alleged that she has severe postural limitations. (*Id.* at Page ID 58). However, she is able to go up and down the stairs in her daughter's home several times each day and is able to walk ten minutes to meet her friend for coffee. (*Id.*). Ms. Randall's ability to perform these day-to-day activities is inconsistent with her subjective claim that she is unable to function similarly in a work environment.

Therefore, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation on this point and affirms the Commissioner's finding.

### C. The ALJ's Hypothetical Question to the VE Incorporated the Entire RFC, and the RFC Was Supported by Substantial Evidence

Hypothetical questions posed to VEs must include "a complete assessment of [the claimant's] physical and mental state and should include an accurate portrayal of [the claimant's] individual physical and mental impairments." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 1987). Ms. Randall argues that the ALJ relied on a flawed hypothetical question to the VE at the hearing and that therefore the ALJ's findings are not supported by substantial evidence. (ECF No. 11 at 6). The Magistrate Judge disagreed and recommended upholding the ALJ's use of the hypothetical. (ECF No. 10 at 20-22).

In her Objection to the Magistrate Judge's Report and Recommendation, Ms. Randall appears to acquiesce that the hypothetical incorporated all aspects of the RFC. (ECF No. 11 at 6). However, Ms. Randall contends the true source of the deficiency is that both the RFC and the hypothetical fail to account for the ALJ's finding that Ms. Randall had moderate limitations in concentration, persistence, and pace. (*Id.*). At bottom, Ms. Randall raises the issue of whether an RFC that does not explicitly mention each of the claimant's moderate mental limitations can still be supported by substantial evidence. It can.

A claimant's RCF "is the most the individual can still do despite his or her impairment-related limitations." *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P (S.S.A. Oct. 25, 2017). "A moderate limitation is not a complete impairment." *Capman v. Colvin*, 617 F. App'x 575, 579 (7th Cir. 2015) (citing *Roberson v. Astrue*, 481 F.3d 1020, 1024 (8th Cir. 2007)). One claimant's moderate concentration, persistence, and pace limitations need not always lead to an RFC identical to that of another claimant with moderate limitations in the same general areas. The ALJ may account for the specific nature of an individual's limitations. "[A]n ALJ's hypothetical omitting the terms 'concentration, persistence and pace'" may stand "when it was manifest that the ALJ's alternative phrasing specifically excluded those tasks that someone with the claimant's limitations would be unable to perform." *Simila v. Astrue*, 573 F.3d 503, 521-22 (7th Cir. 2009).

For example, in *Capman v. Colvin*, the Seventh Circuit upheld an ALJ's RFC finding even though the RFC did not explicitly mention the claimant's concentration, persistence, and pace limitations. *Capman*, 617 F. App'x at 579. There, the limitations stemmed from the claimant's anxiety around other people. *Id.* Because the RFC restricted the claimant's interactions with others, the Seventh Circuit held that the RFC adequately accounted for the concentration, persistence, and pace limitations. *Id.*; *see also Benton v. Comm'r of Soc. Sec.*, 511 F.Supp.2d 842 (E.D. Mich. 2007) (approving a hypothetical that included practical restrictions that limited the occasions on which the claimant's concentration disorder was likely to interfere with his job performance).

Ms. Randall relies on *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) to support her claim that the hypothetical and the RFC were inadequate. (ECF No. 11 at 6-8). However, *Ealy* is not controlling on either point here. In *Ealy*, the ALJ credited the RFC rating

of a physician who explained how the claimant's moderate limitations in concentration, persistence, and pace affected the claimant's ability to work. As Ms. Randall herself points out, the RFC assessment in *Ealy* "specifically limited the claimant's ability to sustain attention to complete simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical.'" (*Id.* at 6) (quoting *Ealy*, 594 F.3d at 516). The hypothetical in *Ealy* was faulty because it failed to incorporate this portion of the RFC. *Ealy*, 594 F.3d at 516. Therefore, the Sixth Circuit overturned the ALJ's denial of benefits. *Id.* *Ealy* is distinguishable from the present case because the ALJ's hypothetical incorporated all aspects of Ms. Randall's RFC.

As for the adequacy of the RFC itself, "*Ealy* stands for a limited, fact-based, ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions." *Jackson v. Comm'r of Soc. Sec.*, No. 1:10CV763, 2011 WL 4943966, at *4 (N.D. Ohio Oct. 18, 2011). "*Ealy* does not require further limitations in addition to limiting a claimant to 'simple, repetitive tasks' for every individual found to have moderate difficulties in concentration, persistence, or pace." *Id.* Ms. Randall cites additional cases where an RFC or hypothetical containing the "simple, repetitive tasks" restriction was deemed inadequate due to the presence of moderate restrictions on concentration, persistence, and pace. (ECF No. 11 at 8); *see Daniels v. Astrue*, No. 1:11CV00806, 2012 WL 3309664, at *9-10 (N.D. Ohio May 7, 2012). Under the facts of *Ealy* and similar cases, it is true that such an RFC or hypothetical would be inadequate, but the facts here differ. Courts only follow *Ealy* where a claimant's particular limitations require additional restrictions that the rest of the RFC fails to capture. *See, e.g.*, *Swanson v. Comm'r of Soc. Sec.*, No. 2:11-cv-1100, 2012 WL 2319250, at *3 (S.D. Ohio June 19, 2012) (upholding the denial of benefits and distinguishing *Ealy* where no discrepancy existed

between the ALJ's RFC finding, the hypothetical to the VE, and the credited physician's narrative RFC description).

Here, Dr. Prout's and Dr. Mendelson's narrative RFC findings, which the ALJ credited, were not as restrictive as those of the reviewing physician in *Ealy*. (ECF No. 6 at PageID 124, 155-56). Dr. Prout noted no restriction except that Ms. Randall's limitations meant she would only be able "to interact with the general public, supervisors and peers on as occasional basis." (*Id.* at PageID 124). Though Dr. Mendelson noted moderate concentration, persistence, and pace limitation, he found that Ms. Randall's "capacity to attend and persist for [two-hour] intervals within medical/pain tolerances while accomplishing job tasks consisting of straightforward, recurring, and uniform steps is not seriously limited by the presence of the [limitations]." (*Id.* at PageID 156). The ALJ captured all these restrictions by limiting Ms. Randall's RFC to conducting "simple routine and repetitive tasks… [using] judgment limited to simple work-related decisions… [tolerating] few changes in a routine work setting defined as performing the same duties at the same duty station or location from day to day… [and maintaining] occasional and superficial contact with supervisors, co-workers and the public." (ECF No. 6 at PageID 57). Therefore, the RFC was supported by substantial evidence.

Ms. Randall's particular limitations in concentration, persistence, and pace did not require more restrictions to her RFC than those that the ALJ adopted. In denying benefits to Ms. Randall, the ALJ appropriately relied on the VE's response to a hypothetical that incorporated the entire RFC. Thus, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation on this point and affirms the Commissioner's finding.

## IV.  CONCLUSION

For these reasons, the Court **ACCEPTS** and **AFFIRMS** the Magistrate Judge's Report and Recommendation, (ECF No. 10), thereby **OVERRULING** Ms. Randall's Objection, (ECF No. 7).  The Commissioner's denial of benefits is **AFFIRMED**.  This case is hereby **DISMISSED**.

**IT IS SO ORDERED.**

       /s/ Algenon L. Marbley  
**ALGENON L. MARBLEY**  
**UNITED STATES DISTRICT JUDGE**

**DATED:  June 14, 2018**